**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL HAGUE, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) |
| ACORDA THERAPEUTICS, INC., RON COHEN, DAVID LAWRENCE, and MICHAEL ROGERS, | ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff Michael Hague ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Acorda Therapeutics, Inc. ("Acorda" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Acorda's securities between

April 18, 2016 and November 14, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Acorda is a biotechnology company with a focus on the identification, development, and commercialization of therapies for neurological disorders.

3.      Founded in 1995, the Company is based in Ardsley, New York, and its stock trades on the NASDAQ Global Select market ("NASDAQ") under the ticker symbol "ACOR."

4.      On January 19, 2016, Acorda announced an agreement to acquire Biotie Therapies Corporation ("Biotie") for approximately $363 million (the "Biotie Acquisition").  In its press release announcing the Biotie Acquisition, Acorda advised investors, *inter alia*, that the Company "will obtain worldwide rights to tozadenant, an oral adenosine $A_{2a}$ receptor antagonist currently in Phase 3 development in Parkinson's disease (PD)."  On April 18, 2016, Acorda acquired approximately 93% of the fully diluted capital stock of Biotie.  In September 2016, Acorda completed the Biotie Acquisition.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) tozadenant entailed significant undisclosed safety risks; (ii) accordingly, the Company had overstated tozadenant's approval prospects and commercial viability; (iii) for the foregoing reasons, the Company had likewise overstated the benefits of the Biotie Acquisition; and (iv) as a result of

2

the foregoing, Acorda's shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

6.      On November 15, 2017, Acorda disclosed the deaths of several patients in the Company's final-stage studies of tozadenant.  Acorda advised investors that it had paused new enrollment in the drug's long-term safety studies, pending further discussion with the independent Data Safety Monitoring Board and the U.S. Food and Drug Administration.

7.      On this news, Acorda's share price fell $11.20, or 39.72%, to close at $17.00 on November 15, 2017.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Acorda's principal executive office is located within this Judicial District, and Acorda's stock trades on the NASDAQ, located within this Judicial District.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13.   Plaintiff, as set forth in the attached Certification, acquired Acorda securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.   Defendant Acorda is headquartered in New York, with principal executive offices located at 420 Saw Mill River Road, Ardsley, New York 10502.  Acorda's stock trades on the NASDAQ under the ticker symbol "ACOR."

15.   Defendant Ron Cohen ("Cohen") has served at all relevant times as the Company's Chief Executive Officer, President and Director.

16.   Defendant David Lawrence ("Lawrence") has served as the Company's Principal Accounting Officer and Chief of Business Operations since October 2016.

17.   Defendant Michael Rogers ("Rogers") served as the Company's Chief Financial Officer from October 2013 until October 2016.

18.   The Defendants referenced above in ¶¶ 15-17 are sometimes referred to herein collectively as the "Individual Defendants."

19.   The Individual Defendants possessed the power and authority to control the contents of Acorda's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to

the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Acorda is a biotechnology company with a focus on the identification, development, and commercialization of therapies for neurological disorders.

21.     On January 19, 2016, Acorda announced a press release entitled "Acorda to Acquire Biotie Therapies."  The press release stated, in part:

> ARDSLEY, N.Y.--(BUSINESS WIRE)-- Acorda Therapeutics, Inc. (Nasdaq: ACOR) today announced that it entered into an agreement to acquire Biotie Therapies Corp. (Nasdaq Helsinki BTH1V; NASDAQ: BITI) for €23.5680 per ADS in cash, or the equivalent of $25.60 per ADS based on an exchange rate of 1.0864 U.S. dollars to euros, which values Biotie at approximately $363 million.
>
> ***
>
> "Our acquisition of Biotie positions Acorda as a leader in Parkinson's disease therapeutic development, with three clinical-stage compounds that have the potential to improve the lives of people with Parkinson's. Tozadenant, Biotie's most advanced clinical program, is a promising therapy being developed to reduce daily OFF time," said Ron Cohen, M.D., Acorda's President and CEO. "Adenosine A2a receptor antagonists may be the first new class of drug approved for the treatment of Parkinson's in the U.S. in over 20 years. Approximately 350,000 people with Parkinson's in the U.S. experience OFF periods, and if approved, tozadenant could provide a much needed treatment option."
>
> Dr. Cohen added, "***Tozadenant is a compelling opportunity with potential market exclusivity to 2030. The Phase 2 data were highly statistically significant and clinically meaningful. We are targeting an NDA filing by the end of 2018***."

(Emphasis added.)

**Materially False and Misleading Statements Issued During the Class Period**

22.     The Class Period begins on April 18, 2016, when Acorda issue a press release entitled "Completion of Acorda Therapeutics' Voluntary Tender Offer for All of the Issued and Outstanding Shares, American Depositary Shares, Stock Options, Share Units and Warrants in Biotie Therapies Corp. and Matters Related Thereto."  Acorda stated, in part:

> On 11 March 2016, Acorda Therapeutics, Inc. (Nasdaq:ACOR) ("Acorda" or the "Offeror") commenced a voluntary public tender offer to purchase all of the issued and outstanding shares ("Shares"), American Depositary Shares ("ADSs"), stock options ("Option Rights"), share units ("Share Rights") and warrants ("Warrants") (such securities, collectively, the "Equity Interests") in Biotie Therapies Corp (Nasdaq Helsinki:BTH1V; Nasdaq:BITI) ("Biotie" or the "Company") that are not owned by Biotie or any of its subsidiaries (the "Tender Offer"). The initial acceptance period for the Tender Offer (the "Offer Period") expired on 8 April 2016.
>
> Today, Acorda announced the closing of its purchase of the Equity Interests tendered during the Offer Period. In accordance with the terms and conditions of the Tender Offer, the offer consideration was paid to the holders of Equity Interests who had validly accepted the Tender Offer by 8 April 2016, with Equity Interests denominated in U.S. dollars paid based on the European Central Bank EUR/USD spot rate of 1.1396 as of the close of business on 12 April 2016.

Pursuant to the closing of tender offer, Acorda acquired approximately 93% of the fully diluted capital stock of Biotie.

23.     On May 6, 2016, Acorda filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  For the quarter, the Company reported a net loss of $0.52 million, or $0.01 per diluted share, on revenue of $115.9 million, compared to a net loss of $3.09 million, or $0.07 per diluted share, on revenue of $99.85 million for the same period in the prior year.

24.     In the Q1 2016 10-Q, Acorda stated, in part:

**Biotie Acquisition**

6

In January 2016, we announced that we had entered into a combination agreement to acquire Biotie Therapies Corp. for a cash purchase price of approximately $363 million.  In accordance with the combination agreement, on April 18, 2016, we closed a public tender offer for all of Biotie's capital stock, pursuant to which we acquired approximately 93% of the fully diluted capital stock of Biotie.  On May 4, 2016, we acquired another approximately 4% of Biotie's fully diluted capital stock pursuant to a subsequent public offer to Biotie stockholders that did not tender their shares in the initial tender offer.  Accordingly, we currently own approximately 97% of the fully diluted capital stock of Biotie.  We intend to acquire all remaining shares of Biotie capital stock that have not been tendered to us pursuant to compulsory redemption proceedings under Finnish law that we initiated in April 2016.  We expect to complete the acquisition of 100% of Biotie pursuant to these compulsory redemption proceedings in the second half of 2016.

Subject to completion of the acquisition, as described above, we will obtain worldwide rights to tozadenant, an oral adenosine A2a receptor antagonist currently in Phase 3 development as an adjunctive treatment to levodopa in Parkinson's disease patients to reduce OFF time.  A2a receptor antagonists have the potential to be the first new class of drug for Parkinson's disease in over 20 years.  We believe that tozadenant will be complementary to our other Phase 3 product for Parkinson's disease, CVT-301, because while tozadenant is aimed at reducing overall OFF time, CVT-301 is aimed at rapid improvement of OFF periods when they occur.  ***We project that, if approved, tozadenant could generate peak annual U.S. net revenue of more than $400 million***.

(Emphasis added.)

25.     The Q1 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Cohen and Rogers, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.     On August 4, 2016, Acorda filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q").  For the quarter, the Company reported a net loss of $18.28 million, or $0.40 per diluted share, on revenue of $127.46 million, compared to net income of $1 million, or $0.02 per diluted share, on revenue of $113.71 million for the same period in the prior year.

27.     In the Q2 2016 10-Q, Acorda stated, in part:

**Biotie Acquisition**

In January 2016, we announced that we had entered into a combination agreement to acquire Biotie Therapies Corp.  In accordance with the combination agreement, on April 18, 2016, we closed a public tender offer for all of Biotie's capital stock, pursuant to which we acquired approximately 93% of the fully diluted capital stock of Biotie.  On May 4, 2016, we acquired another approximately 4% of Biotie's fully diluted capital stock pursuant to a subsequent public offer to Biotie stockholders that did not tender their shares in the initial tender offer. Accordingly, we currently own approximately 97% of the fully diluted capital stock of Biotie.  We intend to acquire all remaining shares of Biotie capital stock that have not been tendered to us pursuant to compulsory redemption proceedings under Finnish law that we initiated in April 2016.  We expect to complete the acquisition of 100% of Biotie pursuant to these compulsory redemption proceedings in the second half of 2016.

Subject to completion of the acquisition, as described above, we will obtain worldwide rights to tozadenant, an oral adenosine A2a receptor antagonist currently in Phase 3 development as an adjunctive treatment to levodopa in Parkinson's disease patients to reduce OFF time.  A2a receptor antagonists have the potential to be the first new class of drug for Parkinson's disease in over 20 years.  We believe that tozadenant will be complementary to our other Phase 3 product for Parkinson's disease, CVT-301, because while tozadenant is aimed at reducing overall OFF time, CVT-301 is aimed at rapid improvement of OFF periods when they occur.  ***We project that, if approved, tozadenant could generate peak annual U.S. net revenue of more than $400 million***.

(Emphasis added.)

28.     The Q2 2016 10-Q contained signed certifications pursuant to SOX by Defendants Cohen and Rogers, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On November 7, 2016, Acorda filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q").  For the quarter, the Company reported a net loss of $12.73 million, or $0.28 per diluted share, on revenue of $135.61 million, compared to net income of

$3.94 million, or $0.09 per diluted share, on revenue of $148.2 million for the same period in the prior year.

30.     In the Q3 2016 10-Q, Acorda stated, in part:

**Biotie Acquisition**

In January 2016, we announced that we had entered into a combination agreement to acquire Biotie Therapies Corp.  On September 30, 2016, we completed the acquisition of 100% of the capital stock of Biotie.  Previously, in April and May, 2016, we had acquired approximately 97% of the fully diluted capital stock of Biotie pursuant to public tender offers.  On September 30, 2016, we acquired shares representing the remaining approximately 3% of Biotie's fully diluted capital stock pursuant to compulsory redemption proceedings under Finnish law that we had initiated in April 2016.  Pursuant to these redemption proceedings, we were entitled to acquire these remaining Biotie shares in exchange for our provision of a cash security deposit pending a final determination and payment of the redemption price for these shares.

As a result of the acquisition, we have obtained worldwide rights to tozadenant, an oral adenosine A2a receptor antagonist currently in Phase 3 development as an adjunctive treatment to levodopa in Parkinson's disease patients to reduce OFF time.  A2a receptor antagonists have the potential to be the first new class of drug for Parkinson's disease in over 20 years.  We believe that tozadenant will be complementary to our other Phase 3 product for Parkinson's disease, CVT-301, because while tozadenant is aimed at reducing overall OFF time, CVT-301 is aimed at rapid improvement of OFF periods when they occur.  The tozadenant Phase 3 clinical trial is currently enrolling and Biotie expects that the efficacy phase of this trial will be clinically complete by the end of 2017, with the safety phase continuing thereafter.  ***We project that, if approved, tozadenant could generate peak annual U.S. net revenue of more than $400 million.***

\*\*\*

**Development Pipeline Goals**

Our planned goals and key initiatives with respect to our pipeline during 2016 and beyond are as follows:

\*\*\*

- Continue progressing Biotie's Phase 3 clinical trial of tozadenant, an oral adenosine A2a receptor antagonist being developed as an adjunctive treatment to levodopa in Parkinson's disease patients to reduce OFF time.  The clinical trial is currently enrolling ***and Biotie expects that the efficacy***

9

> *phase of this trial will be clinically complete by the end of 2017, with the*
> *safety phase continuing thereafter.*

(Emphases added.)

31.     The Q3 2016 10-Q contained signed certifications pursuant to SOX by Defendants Cohen and Lawrence, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     On February 27, 2017, Acorda filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended December 31, 2016 (the "2016 10-K").  For the quarter, the Company reported a net loss of $3.09 million, or $0.07 per diluted share, on revenue of $140.63 million, compared to net income of $9.21 million, or $0.21 per diluted share, on revenue of $130.9 million for the same period in the prior year.  For 2016, the Company reported a net loss of $34.62 million, or $0.76 per diluted share, on revenue of $519.6 million, compared to net income of $11.06 million, or $0.25 per diluted share, on revenue of $492.66 million for 2015.

33.     In the 2016 10-K, Acorda stated, in part:

**Biotie Acquisition; Tozadenant, SYN120 and BTT1023**

In 2016, we acquired Biotie Therapies Corp. pursuant to a combination agreement with Biotie for a purchase price of approximately $376 million. . . .

Pursuant to the acquisition, we acquired worldwide rights to tozadenant, an oral adenosine A2a receptor antagonist currently in Phase 3 development as an adjunctive treatment to levodopa in Parkinson's disease patients to reduce OFF time. A2a receptor antagonists have the potential to be the first new class of drug approved in the U.S. for improvement of motor symptoms in Parkinson's disease in over 20 years. We believe that tozadenant would be complementary to our other Phase 3 product for Parkinson's disease, CVT-301, because while tozadenant is being developed as a chronic therapy for reducing overall OFF time, CVT-301 is being developed for episodic use for rapid improvement of OFF periods when they occur. Biotie is currently conducting a Phase 3 clinical trial in

which tozadenant is taken along with a person's other Parkinson's disease therapies. The trial, which is being conducted under a special protocol assessment, or SPA, from the FDA, is assessing improvement of motor function and activities of daily living in people with Parkinson's disease while taking tozadenant. *We believe that this trial, if successful, together with data from a prior Phase 2b clinical trial, will provide sufficient efficacy data to file an NDA. We expect efficacy data from this trial in the first quarter of 2018.* A separate open-label safety study is expected to begin enrollment in the first half of 2017.

(Emphasis added.)

34.     The 2016 10-K contained signed certifications pursuant to SOX by Defendants Cohen and Lawrence, stating that the financial information contained in the 2016 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     On May 9, 2017, Acorda filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q").  For the quarter, the Company reported a net loss of $18.9 million, or $0.41 per diluted share, on revenue of $119.39 million, compared to a net loss of $0.52 million, or $0.01 per diluted share, on revenue of $115.9 million for the same period in the prior year.

36.     In the Q1 2017 10-Q, Acorda stated, in part:

We believe that our INBRIJA and tozadenant programs, if approved, will serve as the foundation for Acorda's future value. Our top priorities over the next 12 months are to:

- Submit a New Drug Application, or NDA, for INBRIJA to the FDA in the second quarter of 2017 and submit a Marketing Authorization Application, or MAA, in the EU by the end of 2017.

- Continue with preparations for commercialization and launch of INBRIJA in the U.S.

- *Complete the ongoing Phase 3 efficacy clinical trial of tozadenant, with topline results expected in the first quarter of 2018.*

- Maximize Ampyra value and ensure continued patient access.

***

**Tozadenant/Parkinson's Disease**

Through Biotie we acquired worldwide rights to tozadenant, an oral adenosine A2a receptor antagonist currently in Phase 3 development as an adjunctive treatment to levodopa in Parkinson's disease patients to reduce OFF time. A2a receptor antagonists have the potential to be the first new class of drug approved in the U.S. for improvement of motor symptoms in Parkinson's disease in over 20 years. We believe that tozadenant would be complementary to our other Phase 3 product for Parkinson's disease, INBRIJA, because while tozadenant is being developed as a chronic therapy for reducing overall OFF time, INBRIJA is being developed for episodic use for rapid improvement of OFF periods when they occur. Biotie is currently conducting a Phase 3 clinical trial, in which tozadenant is taken along with a person's other Parkinson's disease therapies. The trial is being conducted under a special protocol assessment, or SPA, from the FDA and is comparing two of the dose arms of tozadenant, 60 mg and 120 mg, that were studied in a prior Phase 2b clinical trial versus placebo. The trial is assessing improvement of motor function and activities of daily living in people with Parkinson's while taking tozadenant. The Phase 2b trial showed, among other positive findings, that 120 mg doses of tozadenant resulted in an average increase of 1.1 hours of ON time without troublesome dyskinesias, relative to placebo; this was in patients already receiving multiple other Parkinson's therapies. We believe that this trial, if successful, together with data from the prior Phase 2b clinical trial, will provide sufficient efficacy data to file an NDA with the FDA. We expect efficacy data from this trial in the first quarter of 2018. A separate open-label, long-term safety study commenced enrollment in April 2017. We believe that tozadenant, if approved by the FDA, represents a commercial opportunity in the U.S. that is greater than that of INBRIJA.

(Emphasis added.)

37.     The Q1 2017 10-Q contained signed certifications pursuant to SOX by Defendants Cohen and Lawrence, stating that the financial information contained in the Q1 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.     On June 6, 2017, Acorda issued a press release entitled "Acorda Presenting New Tozadenant Data at 2017 MDS Congress." The press release stated, in part:

Acorda Therapeutics, Inc. (Nasdaq: ACOR) is presenting new data from clinical and preclinical studies of tozadenant at the 2017 International Congress of Parkinson's Disease and Movement Disorders (MDS), being held in Vancouver,

British Columbia from June 4-8, 2017. Acorda is developing tozadenant as a daily maintenance therapy to reduce OFF time for people with Parkinson's taking an oral carbidopa / levodopa regimen. OFF refers to the re-emergence of Parkinson's symptoms.

"OFF is cited by people with Parkinson's as one of the most challenging aspects of their disease to manage," said Burkhard Blank, M.D., Acorda's Chief Medical Officer. "Tozadenant represents a potential first-in-class treatment for Parkinson's in the U.S. that is being studied to reduce overall daily OFF time."

Tozadenant data being presented at the MDS congress include:

- Associating patient impression of improvement with efficacy endpoints in Parkinson's disease: A post-hoc analysis of a tozadenant study (abstract #1433)

- Tozadenant phase 3 study (TOZ-PD) in Parkinson's disease patients with motor fluctuations: baseline characteristics (abstract #1432)

- Efficacy of tozadenant in animal models of non-motor symptoms of Parkinson's disease (abstract #120)

Acorda expects results from an ongoing tozadenant Phase 3 clinical trial in Q1 2018. In addition, the Company initiated an open-label, long-term safety study in the second quarter of 2017.

39.     On August 8, 2017, Acorda filed a quarterly report on Form 10-Q with the SEC,

reporting the Company's financial and operating results for the quarter ended June 30, 2017 (the

"Q2 2017 10-Q").  For the quarter, the Company reported a net loss of $8.2 million, or $0.18 per

diluted share, on revenue of $139.44 million, compared to a net loss of $18.28 million, or $0.40

per diluted share, on revenue of $127.46 million for the same period in the prior year.

40.     In the Q2 2017 10-Q, Acorda stated, in part:

We believe that our Inbrija and tozadenant programs, if approved, will serve as the foundation for Acorda's future value. In June 2017, we announced that we had submitted a New Drug Application, or NDA, for Inbrija to the FDA. Based on current guidelines, we anticipate that the FDA will inform us by the end of September 2017 if the submission has been accepted for full review, and expect a 10-month review. Our other top priorities through early 2018 are to:

- Submit a Marketing Authorization Application, or MAA, for Inbrija in the EU by the end of 2017.

- Continue with preparations for commercialization and launch of Inbrija in the U.S.

- ***Complete the ongoing Phase 3 efficacy clinical trial of tozadenant, with topline results expected in the first quarter of 2018.***

- Maximize Ampyra value.

***

**Tozadenant/Parkinson's Disease**

Through Biotie we acquired worldwide rights to tozadenant, an oral adenosine A2a receptor antagonist currently in Phase 3 development as an adjunctive treatment to levodopa in Parkinson's disease patients to reduce OFF time. A2a receptor antagonists have the potential to be the first new class of drug approved in the U.S. for improvement of motor symptoms in Parkinson's disease in over 20 years. We believe that tozadenant would be complementary to our other Phase 3 product for Parkinson's disease, Inbrija, because while tozadenant is being developed as a chronic maintenance therapy for reducing overall OFF time, Inbrija is being developed as an on-demand therapy for improvement of OFF periods when they occur. We believe that tozadenant, if approved by the FDA, represents a commercial opportunity in the U.S. that is greater than that of Inbrija.

Biotie is currently conducting a Phase 3 clinical trial, in which tozadenant is taken along with a person's other Parkinson's disease therapies. The trial is being conducted under a special protocol assessment, or SPA, from the FDA and is comparing two of the dose arms of tozadenant, 60 mg and 120 mg, that were selected from the prior Phase 2b clinical trial versus placebo. The trial is assessing improvement of motor function and activities of daily living in people with Parkinson's while taking tozadenant. The Phase 2b trial showed, among other positive findings, that 120 mg doses of tozadenant resulted in an average increase of 1.1 hours of ON time without troublesome dyskinesias, relative to placebo; this was in patients already receiving multiple other Parkinson's therapies. We believe that this trial, if successful, together with data from the prior Phase 2b clinical trial, will provide sufficient efficacy data to file an NDA with the FDA. We expect efficacy data from this trial in the first quarter of 2018. In June 2017, we presented new data from clinical and pre-clinical studies of tozadenant at the 2017 International Congress of Parkinson's Disease and Movement Disorders (MDS). A separate open-label, long-term safety study commenced enrollment in April 2017.

(Emphasis added.)

41.     The Q2 2017 10-Q contained signed certifications pursuant to SOX by Defendants Cohen and Lawrence, stating that the financial information contained in the Q2 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

42.     On November 7, 2017, Acorda filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 10-Q").  For the quarter, the Company reported a net loss of $25.2 million, or $0.55 per diluted share, on revenue of $141.07 million, compared to a net loss of $21.73 million, or $0.28 per diluted share, on revenue of $135.61 million for the same period in the prior year.

43.     In the Q3 2017 10-Q, Acorda stated, in part:

Our other top priorities through early 2018 are to:

- Submit a Marketing Authorization Application, or MAA, for Inbrija in the EU in the first quarter of 2018. We have revised the timing of our submission of the MAA given our team's focus on the NDA resubmission.

- Continue with preparations for commercialization and launch of Inbrija in the U.S.

- ***Complete the ongoing Phase 3 efficacy clinical trial of tozadenant, with topline results expected in the first quarter of 2018.***

- Maximize Ampyra value.

                              ***

**Tozadenant/Parkinson's Disease**

Through Biotie we acquired worldwide rights to tozadenant, an oral adenosine A2a receptor antagonist currently in Phase 3 development as an adjunctive treatment to levodopa in Parkinson's disease patients to reduce OFF time. A2a receptor antagonists have the potential to be the first new class of drug approved in the U.S. for improvement of motor symptoms in Parkinson's disease in over 20 years. We believe that tozadenant would be complementary to our other Phase 3

product for Parkinson's disease, Inbrija, because while tozadenant is being developed as a chronic maintenance therapy for reducing overall OFF time, Inbrija is being developed as an on-demand therapy for improvement of OFF periods when they occur. We believe that tozadenant, if approved by the FDA, represents a potential commercial opportunity in the U.S. greater than that of Inbrija.

Biotie is currently conducting a Phase 3 clinical trial, in which tozadenant is taken along with a person's other Parkinson's disease therapies. The trial is being conducted under a special protocol assessment, or SPA, from the FDA and is comparing two of the dose arms of tozadenant, 60 mg and 120 mg, that were selected from the prior Phase 2b clinical trial versus placebo. The trial is assessing improvement of motor function and activities of daily living in people with Parkinson's while taking tozadenant. The Phase 2b trial showed, among other positive findings, that 120 mg doses of tozadenant resulted in an average increase of 1.1 hours of ON time without troublesome dyskinesias, relative to placebo; this was in patients already receiving multiple other Parkinson's therapies. We believe that this trial, if successful, together with data from the prior Phase 2b clinical trial, will provide sufficient efficacy data to file an NDA with the FDA. We expect efficacy data from this trial in the first quarter of 2018. In June 2017, we presented new data from clinical and pre-clinical studies of tozadenant at the 2017 International Congress of Parkinson's Disease and Movement Disorders (MDS). A separate open-label, long-term safety study commenced enrollment in April 2017.

(Emphasis added.)

44.     The Q3 2017 10-Q contained signed certifications pursuant to SOX by Defendants Cohen and Lawrence, stating that the financial information contained in the Q3 2017 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     The statements referenced in ¶¶ 22-44 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) tozadenant entailed significant undisclosed safety risks; (ii) accordingly, the Company had overstated tozadenant's approval prospects and commercial viability; (iii) for the foregoing

reasons, the Company had likewise overstated the benefits of the Biotie Acquisition; and (iv) as a result of the foregoing, Acorda's shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

### **The Truth Begins to Emerge**

46.     On November 15, 2017, Acorda issued a press release, entitled "Acorda Provides Update on Tozadenant Development Program," in which the Company disclosed the deaths of several patients in the Company's final-stage studies of tozadenant.  Specifically, the Company stated, in part:

> Acorda Therapeutics, Inc. (Nasdaq:ACOR) today announced that it has increased the frequency of blood cell count monitoring for participants to weekly in its Phase 3 program of tozadenant for Parkinson's disease. The Company took this action in response to cases of agranulocytosis, possibly drug-related, and in some cases associated with sepsis and death. Agranulocytosis is the absence of white blood cells, which fight infection. ***The Company also has paused new enrollment in the long-term safety studies, pending further discussion with the independent Data Safety Monitoring Board (DSMB) and the United States Food and Drug Administration (FDA).***
>
> The Phase 3 program includes an ongoing pivotal efficacy and safety study (CL05) and two long-term safety studies (CL05 extension and CL06).
>
> Including the previously conducted Phase 2b study, approximately 890 patients have been exposed to tozadenant and 234 have been exposed to placebo. This corresponds to approximately 300 patient years of tozadenant exposure and 75 patient-years of placebo. ***There have been seven cases of sepsis, all in the tozadenant groups, five of which were fatal.*** Four of the sepsis cases were associated with agranulocytosis, two had no white blood cell counts available at the time of the event and one had a high white blood cell count.
>
> "We have taken these steps in the best interests of the safety of patients in the tozadenant studies, which is our top priority," said Ron Cohen, M.D., Acorda's President and CEO. "Contingent on further input from the DSMB and FDA, we continue to expect to report efficacy and safety results of the double-blind Phase 3 study in the first quarter of 2018."

(Emphases added.)

47.     On this news, Acorda's share price fell $11.20, or 39.72%, to close at $17.00 on November 15, 2017.

48.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Acorda securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Acorda securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Acorda or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Acorda;

- whether the Individual Defendants caused Acorda to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Acorda securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

55.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Acorda  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Acorda securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Acorda securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Acorda securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Acorda securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Acorda's finances and business prospects.

62.     By virtue of their positions at Acorda , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Acorda, the Individual Defendants had knowledge of the details of Acorda's internal affairs.

64.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Acorda.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Acorda's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Acorda securities was artificially inflated throughout the Class Period.  In

ignorance of the adverse facts concerning Acorda's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Acorda securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65.     During the Class Period, Acorda securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Acorda securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Acorda securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Acorda securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

68.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     During the Class Period, the Individual Defendants participated in the operation and management of Acorda, and conducted and participated, directly and indirectly, in the conduct of Acorda's business affairs.  Because of their senior positions, they knew the adverse non-public information about Acorda's misstatement of income and expenses and false financial statements.

70.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Acorda's financial condition and results of operations, and to correct promptly any public statements issued by Acorda which had become materially false or misleading.

71.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Acorda disseminated in the marketplace during the Class Period concerning Acorda's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Acorda to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Acorda within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Acorda securities.

72.    Each of the Individual Defendants, therefore, acted as a controlling person of Acorda. By reason of their senior management positions and/or being directors of Acorda, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Acorda to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Acorda and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Acorda.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 17, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, Michael Hague, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Acorda Therapeutics, Inc. ("Acorda" or the "Company") and, authorize the filing of a motion on my behalf for appointment as lead plaintiff.

3.    I did not purchase or acquire Acorda securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Acorda securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in Acorda securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

**Executed** ___ $\frac{11}{17}/2017$ ___
          (Date)

_____
(Signature)

_____
(Type or Print Name)

**ACORDA THERAPEUTICS, INC. (ACOR)**                    **Hague, Michael**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| 10/6/2017 | Purchase | 50 | $24.8000 |
| 10/3/2017 | Purchase | 50 | $25.0000 |